```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
LARRY JACOBSON, as Chairman of the
Joint Industry Board of the Electrical Industry,
                                                                    REPORT &
                                        Plaintiff,                  RECOMMENDATION
                                                                    03-CV-263 (DLI)(SMG)
            -against-

CITI-WIDE ELECTRICAL CORP. d/b/a
CITI-WIDE ELECTRIC, INC. and JOHN GORMAN,

                                        Defendants.
-------------------------------------------------------------------------X
```
*Gold, S., U.S. Magistrate Judge*:

## Introduction

Plaintiff, Larry Jacobson ("Jacobson"), Chairman of the Joint Industry Board of the Electrical Industry ("Joint Board" or "JB"), brings this action against Citi-Wide Electrical Corp. and John Gorman (collectively "defendants") to recover monies due and owing pursuant to a Collective Bargaining Agreement ("CBA"). Plaintiff asserts claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and to enforce an amended Stipulation and Forbearance Agreement.

Although defendants answered the complaint and appeared in the action, they failed to comply with discovery orders. I therefore issued a report in November of 2006, recommending that defendants' counterclaims be dismissed and that their default be entered. DE 35.[1] United States District Judge Dora L. Irizarry adopted my recommendation and referred the matter to me to report further on the issue of damages. DE 36.

In support of his application for damages, plaintiff has submitted a motion for default judgment, the Declaration of David Hock ("Hock Decl."), and the Declaration of Christina Sessa

---

[1] "DE" refers to entries on the court's docket in this case.

("Sessa Decl."). DE 37, 41. Defendants have filed an affidavit of their counsel in opposition to plaintiff's motion ("Devine Aff."), DE 39, and plaintiff has filed a reply ("Pl.'s Reply"), DE 42. For the following reasons, I recommend that plaintiff's motion be granted in part and that damages be awarded as indicated below.

### Facts Alleged in Plaintiff's Amended Complaint

Plaintiff's amended complaint, DE 2, sets forth the following pertinent facts. The plaintiff is the chairman of a board that administers various ERISA and non-ERISA plan funds. Am. Compl. ¶ 4-7. Employer signatories to the CBA, such as the corporate defendant in this case, are required to submit weekly contributions and payroll reports to the Joint Board. *Id.* ¶¶ 7, 11-13.

Citi-Wide failed to make contributions required under the CBA. In or about October of 2002, Citi-Wide and Gorman entered into a Stipulation with plaintiff (the "First Stipulation"), providing that they would remit unpaid contributions for weeks ending on July 5, 2000 through June 27, 2001; July 4, 2002 through March 31, 2002; and October 2, 2002. *Id.* ¶ 16. The First Stipulation required defendants to make payments in specified amounts until the principal balance due was paid in full. *Id.* ¶ 21. Plaintiff's complaint alleges that "[i]n consideration for and as an inducement to the Joint Board to enter into the Stipulation, Gorman signed the Stipulation personally." *Id.* ¶ 24.

Although defendants made several of the payments required by the First Stipulation, they ultimately fell behind. *Id.* ¶ 26. When defendants failed to cure their default, this action followed.

### Procedural History

This case has a somewhat complicated procedural history. The original complaint was filed in January of 2003. DE 1. With no answer yet served, plaintiff filed an amended complaint against Citi-Wide and Gorman on February 19, 2003. DE 2. Although counsel noticed an appearance for

the corporate defendant in the action, DE 5, no answer was filed. On May 19, 2003, defense counsel served plaintiff with an answer to the amended complaint and counterclaims, but failed to file that answer with the court. Hock Decl. ¶ 6. Thereafter, the clerk noted the defendants' default, and the case was referred to the then-assigned Magistrate Judge for a report and recommendation. DE 9-10.

Defendants finally filed their answer and counterclaims on November 13, 2003, and the parties agreed to vacate the default and move forward with discovery. DE 12-16. However, both Citi-Wide and Gorman then filed for bankruptcy, resulting in a stay of this action until August, 2005, when the bankruptcy proceedings concluded. Hock Decl. ¶¶ 12-15. At that point, discovery recommenced. Defendants, however, failed to respond to written discovery demands or appear for their depositions. Hock Decl. ¶¶ 16-18.

As a result of defendants' failure to participate in discovery, I issued a report recommending that an order be issued entering the defendants' default and dismissing their counterclaims. DE 35. Judge Irizzary adopted my recommendation and referred this case to me to issue a recommendation on the nature and amount of any final judgment. DE 36.

## Discussion

A. <u>Entry of Default</u>

As noted above, defendants, despite being in default, have submitted opposition to plaintiff's motion for a default judgment. DE 39. Although defendants have not moved to vacate their default, I first consider whether there is good cause to do so.

An entry of default may be set aside "[f]or good cause shown." Fed.R.Civ.P. 55(c). Courts do not always require that a defendant specifically move to set aside a default before considering whether there is good cause to do so. *See Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981)

("[O]pposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion."). I therefore construe defendants' response to plaintiff's motion for default judgment broadly and consider the issue of good cause.

A district court has considerable discretion when determining whether there is good cause to vacate an entry of default, and should take into account the following factors:

> (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. Because there is a preference for resolving disputes on the merits, doubts should be resolved in favor of the defaulting party. Ultimately, the matter of whether to grant relief from the entry of a default is left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.

*Powerserve Intern., Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (internal quotations and citations omitted).

Defendants' default was plainly willful. Defendants, who were represented by counsel, repeatedly failed to comply with discovery orders. I specifically warned defendants that any failure to produce documents or appear at a deposition on specified dates would result in a recommendation that their default be entered. *See* Minute Entry for proceedings held on April 13, 2006. Nevertheless, defendants did not comply. It is equally plain that plaintiff would be prejudiced if the default were set aside. Plaintiff has been prosecuting this action for several years, and has already once stipulated to vacate a previously entered default. Finally, although defendants seek to avoid liability on the grounds that they entered into the First Stipulation under duress, they have, as discussed below, failed to present any evidence suggesting a potentially meritorious duress defense. Accordingly, these is no basis for vacating the defendants' default.

B.  <u>Liability</u>

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A court, however, retains the discretion to determine whether entry of a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Even after a defendant has defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action). I consider each of plaintiff's claims in turn.

*1) ERISA Claim Against the Corporate Defendant*

Plaintiff alleges that defendant Citi-Wide failed to pay contributions required by its CBA and installment payments due under the First Stipulation. Plaintiff contends that these failures constitute violations of ERISA, 29 U.S.C. § 1145. Am. Compl. ¶ 34.

Section 1145 states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Plaintiff has clearly pleaded facts that establish liability under this section. Defendant was obligated to make contributions pursuant to a CBA in effect during the time relevant to plaintiff's complaint. Am. Compl. ¶¶ 11-12. Plaintiff has alleged that defendants failed to pay the required contributions

5

when they became due. *Id.* ¶ 16. Plaintiff further alleges that, even after defendants acknowledged that they owed delinquent contributions and agreed to pay them pursuant to the First Stipulation, defendants failed to make the payments the stipulation required. *Id.* ¶ 26. Thus, plaintiff's complaint properly alleges a cause of action under ERISA.

### 2) *Individual Liability of defendant John Gorman*

Plaintiff's complaint alleges that, under the CBA, the principals of certain employers "must guarantee the payment of contributions to the Joint Board." Am. Compl. ¶ 38. Plaintiff contends that defendant John Gorman is therefore personally liable for Citi-Wide's failure to pay contributions required by its CBA. *Id.* ¶ 39.

Generally, a corporate officer is not personally liable for the ERISA obligations of the corporation absent unusual circumstances, such as fraud or facts warranting piercing the corporate veil. *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994); *Sasso v. Cervoni*, 985 F.2d 49, 50-51 (2d Cir. 1993). Even where the signature page of a collective bargaining agreement contains text specifically providing for personal liability, a corporate officer will not be held individually liable absent "clear and explicit evidence" of the parties' intent that he be personally bound. *See Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 52-54 (2d Cir. 2002) (noting that "New York law requires that there be 'clear and explicit' evidence of the defendant's intent to add personal liability to the liability of the entity," and that "the high degree of intention . . . goes beyond the mere presence of a personal liability clause in the signed agreement"). Thus, the court in *Thomsen* refused to impose personal liability despite language in the CBA stating that "[t]he person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this

6

Agreement." *Id.*, 301 F.3d at 52.

The Second Circuit has specified the factors relevant to determining whether individual liability should be imposed as follows:

> The factors to be examined in assessing the signatory's intention [to be personally bound] include the length of the contract, the location of the liability provision(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation.

*Lollo*, 35 F.3d at 35. In *Thomsen*, the court added that, although two signatures are not required, "the appearance of only one signature, especially when that signature is in [the individual's] official capacity," supports a finding that the signer did not intend to be personally bound. 301 F.3d at 54.

With these principles in mind, I now consider whether Gorman should be held personally responsible under either the CBA, the Stipulation, or both.

*The Stipulation*

Plaintiff seeks to recover amounts due under a stipulation entered into after the amended complaint was filed. Although they made a series of payments pursuant to the First Stipulation, defendants failed to make all the payments the stipulation required. Hock Decl. ¶¶ 37-39. The parties then negotiated a new Stipulation and Forbearance Agreement (the "Second Stipulation") *Id.* ¶ 40, Ex. E. Again, however, after making several payments pursuant to the Second Stipulation, defendants defaulted with almost $20,000 still owing. *Id.* ¶ 57.

There can be little doubt that plaintiff has established Gorman's personal liability for the amounts due under the Second Stipulation. First, the contract is a simple, short document, and contemplates full payment over a relatively brief period of time. Second, Gorman signed the document twice, both as principal of Citi-Wide and personally. Hock Decl. Ex. E at 4. *See*

*Thomsen*, 301 F.3d at 54 (recognizing that, when an individual is to be held personally responsible, "the nearly universal practice" is for that individual to sign twice: once as an officer and once as an individual). Finally, Gorman executed an "Affidavit for Judgment by Confession" in which he authorized judgement to be entered against Citi-Wide *and* himself individually. Hock Decl., Ex. E at 5. These circumstances clearly demonstrate that Gorman intended to be held personally liable.

As noted above, defendants seek to avoid enforcement of the Stipulation on the grounds of the "unfair bargaining positions of the parties." Devine Aff. ¶ 2, DE 39. The burden of establishing a defense of duress to contract formation, however, is a "heavy" one, and "cannot be sustained by a contracting party who has simply been bested in contract negotiations by the hard bargaining of another contracting party." *See Regent Partners, Inc. v. Parr Dev. Co., Inc.*, 960 F. Supp. 607, 612 (E.D.N.Y.1997). Gorman argues that the stipulation should not be enforced because it was prepared by an attorney for plaintiff and Gorman signed it without being represented by counsel. However, a contract is not unenforceable simply because one party to the agreement was represented by counsel and the other was not. *See Lounsbury v. Lounsbury*, 300 A.D.2d 812, 815, 752 N.Y.S.2d 103, 108 (3d Dep't 2002) (stating that "[i]t is well established that a separation agreement is not invalid simply because one spouse was not represented by counsel"); *Bonem v. Garriott*, 159 A.D.2d 206, 552 N.Y.S.2d 16 (1st Dep't 1990) (finding that even though the wife was not represented by counsel during agreement's negotiation, the wife affirmatively chose to personally negotiate the agreement without the aid of an attorney, and that there was nothing to indicate duress); *Marotta v. Dinozzi*, 287 A.D. 491, 731 N.Y.S.2d 221, 222 (2d Dep't 2001) (pointing out that "[a] court will not automatically nullify a stipulation on the ground that a party was not represented by counsel"). *See also Citibank, N.A. v. Collins*, 1991 WL 64174 (S.D.N.Y. Apr. 15, 1991) (holding that "[t]he failure of a defendant to read documents or seek counsel to interpret a

8

contract cannot be viewed as fraud or overreaching on the part of the plaintiff").

For all these reasons, I recommend that any judgment for amounts due under the Second Stipulation be entered against both Citi-Wide and Gorman individually.

*The Collective Bargaining Agreement*

The CBA presents a different situation. Plaintiff has apparently not provided the signature page of the CBA, and has not alleged that Gorman signed the CBA in his individual capacity. Nor has plaintiff asserted or provided evidence of the factors identified in *Lallo* as warranting imposition of personal liability. Under these circumstances, there is no basis for imposing personal liability on defendant Gorman for amounts due solely pursuant to the CBA.

C.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d 155, 158 (2d Cir. 1992). Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id.* Thus, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.

Plaintiff has presented detailed documentation in support of the damages he seeks. Defendants have submitted an affirmation in opposition that challenges the sufficiency of plaintiff's proof, but does not contest plaintiff's calculations or deny that the amounts plaintiff seeks to recover

are owed. DE 39. Neither side has sought a hearing on damages. I therefore determine the amount of damages to be awarded based upon the parties' submissions.

Plaintiff seeks to recover 1) the balance due under the Stipulation, 2) the amounts of five dishonored checks signed by Gorman, 3) unpaid contributions under the CBA for the weeks ending November 5, 2003 to May 31, 2004, 4) interest and liquidated damages as provided under ERISA, and 5) attorney's fees and costs. I address each item in turn below.

### 1) *Balance and Interest Due Under the Stipulation*

Plaintiff alleges that the principal balance due under the Second Stipulation is $19,991.91, and explains how that figure was derived in a declaration of its counsel. Hock Decl. ¶¶ 43, 54-56. The Second Stipulation provides for interest on the amount due at the rate established by the Plans to which those amounts are owed. Hock Decl. Ex. E, ¶ 4. Plaintiff seeks interest at the annual rate of 5.25%, which plaintiff explains is the lowest of the rates provided for in the relevant Plans. Hock Decl. ¶¶ 77-79, Ex. G.

Plaintiff has thoroughly documented this aspect of its damages demand by submitting copies of the October 2002 and April 2003 Stipulations and records reflecting and documenting payments made pursuant to the Stipulations. Hock Decl., Exs. B-G. Moreover, defendants do not challenge plaintiff's computations. Accordingly, I respectfully recommend that judgment be entered against both Gorman, in his individual capacity, and Citi-Wide, jointly and severally, for the balance of the Stipulation, $19,991.91, together with interest at the annual rate of 5.25%, from May 1, 2003 through the date final judgment is entered.[2]

---

[2] The Second Stipulation was executed on an unspecified date in April of 2003. *See* Hock Decl. ¶ 40 and Ex. E.

*2) Unpaid Contributions*

Plaintiff also seeks to recover unpaid contributions due under the CBA that are not included in the amount due under the Second Stipulation. As stated above, plaintiff has properly pleaded a cause of action for contributions due under ERISA. Accordingly, plaintiff is entitled to damages under § 1132, which provides as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>     (A) the unpaid contributions,
>     (B) interest on the unpaid contributions,
>     (C) an amount equal to the greater of–
>         (i) interest on the unpaid contributions, or
>         (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
>     (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>     (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Plaintiff seeks to recover unpaid weekly contributions due under the CBA for various ERISA Plans for the weeks ending November 5, 2003 to May 31, 2004. Hock Decl. ¶ 64. Because Citi-Wide failed to submit weekly payroll reports as required by the CBA, plaintiff is entitled to calculate the amount of delinquent contributions due and owing by extrapolating from previously submitted payroll reports. Hock Decl. ¶¶ 65-68. *See, e.g., Perishable Food Indus. Pension Fund v. Am. Banana Co., Inc.*, 2003 WL 21542316, *3-4 (S.D.N.Y. July 1, 2003).

Plaintiff has submitted an example of a prior payroll report from which it has extrapolated damages and an accounting of the amounts estimated to be due for each week. Hock Decl., Exs. J-K. According to plaintiff's calculations, which defendants do not dispute, defendant Citi-Wide owes $70,727.80 in delinquent contributions. Hock Decl. ¶¶ 69-71.

The contributions plaintiff seeks to recover came due after the complaint and amended complaint in this action were filed. Ordinarily, when a defendant defaults, a plaintiff may not recover damages that accrue after his complaint was filed. *See* FED. R. CIV. P. 54(c) (providing that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment"). Here, however, defendants have appeared in the case, are represented by counsel, and have submitted opposition to the damages sought by plaintiff. Accordingly, defendants and their counsel have been placed on notice of the damages plaintiff seeks, and have been afforded an opportunity to contest both liability and the amount of damages sought. Defendants would not, therefore, be unfairly prejudiced by entry of a final judgment for damages that accrued after the amended complaint was filed. I therefore respectfully recommend that the final judgment entered against defendant Citi-Wide include the full amount of unpaid contributions plaintiff seeks, or $70,727.80.

### *3) Dishonored Checks*

Plaintiff seeks to recover an amount equal to the face value of five checks received from Citi-Wide that were dishonored. The checks, according to a schedule submitted by plaintiff, total $31,079.83. Hock Decl. ¶¶ 57-61, Ex. H. According to plaintiff, these checks are not among those already included in the Stipulation and presumably reflect amounts due to plaintiff from Citi-Wide that were never paid. Therefore, I respectfully recommend that the final judgment entered against defendant Citi-Wide include the amount of the dishonored checks, or $31,079.83.

### *4) Interest on Unpaid Contributions*

Plaintiff seeks interest on the amounts of the unpaid contributions and dishonored checks. Section 1132(g)(2) provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29

U.S.C. § 1132(g).

Rates are established by the plans for the Pension, Hospitalization, and Benefits Fund ("PHBF") and the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund ("NEBF"). The PHBF plan provides for interest at the prime rate plus one-half percent. Hock Decl. ¶ 76, Ex. L, Article 5.5(c)(ii). The NEBF plan provides for 10 percent interest. *Id*. ¶ 76, Ex. M, section 6.9.3. Plaintiff has submitted a listing from the Federal Reserve website of the prime rates during the relevant time period. Hock Decl., Ex. N. For contributions due to the remaining plans, plaintiff seeks interest at the rate provided under 26 U.S.C. § 6621. Plaintiff has provided a listing from the Department of Labor's website of these rates as well. Hock Decl., Ex. O.

Plaintiff has set forth the rates in the Hock Declaration, *see* ¶ 83, and calculated the interest on unpaid contributions to the ERISA plans through March 19, 2007 to be $10,114.16. Hock Decl. ¶ 83, Ex. K. Plaintiff has also calculated the combined per diem rate of interest on these contributions to be $8.80 per day. Plaintiff has provided a chart of its calculations. Hock Decl., Ex. K. Although the court has not checked each step in plaintiff's arithmetic, the calculations appear to be correct and are in any event not disputed by defendants. Therefore, I respectfully recommend entry of a judgment against defendant Citi-Wide awarding plaintiff $10,114.16 in interest on unpaid contributions through March 19, 2007, and additional interest through the date judgment is entered at the rate of $8.80 per day.

### 5) *Interest on Dishonored Checks*

Plaintiff seeks interest on the five dishonored checks discussed above at the interest rates established by the relevant plans. Hock Decl. ¶ 81. Plaintiff has provided a written record of its calculations, Hock Decl. ¶ 81, Ex. K, and defendant has not challenged them. Therefore, I respectfully recommend that plaintiff be awarded $6,249.84 in interest through March 19, 2007,

13

and additional interest through the date judgment is entered at the rate of $4.20 per day.

### 6) *Liquidated Damages*

Plaintiff seeks an award of liquidated damages pursuant to § 1132(g)(2)(C). Under this section, a plaintiff may elect an amount equal to the interest due on unpaid contributions or 20% of the total amount of unpaid contributions. Plaintiff seeks liquidated damages in an amount equal to the interest owed by defendants. Hock Decl. ¶ 86. Accordingly, I recommend that plaintiff be awarded liquidated damages in an amount equal to the interest awarded on the date final judgment is entered.

### 7) *Attorney's Fees and Costs*

Finally, plaintiff seeks to recover his attorney's fees and costs. Upon a finding that a defendant has been delinquent in paying contributions, liability for attorney's fees under section 1132(g)(2) is mandatory. *See Iron Workers Dist. Council of Western New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995). The Second Stipulation similarly provides for recovery of attorney's fees. Hock Decl., Ex. E ¶ 5.

All claims for attorney's fees in the Second Circuit must comply with *New York State Ass'n for Retarded Children, Inc. v. Carey*, which requires an attorney's declaration supported by contemporaneous time records for all claims for attorney's fees. 711 F.2d 1136, 1148 (2d Cir. 1983); *Plumbers Local No. 371 Joint Plumbing Indus. Bd. Pension Fund v. Frank Liquori Plumbing & Heating, Inc.*, 1996 WL 445065, at *5 (E.D.N.Y. June 26, 1996) (acknowledging that attorney's fees are mandatory under § 1132(g)(2), but denying attorney's fees where plaintiff failed to comply with the requirements of *Carey*).

Plaintiff seeks to recover $66,629 in attorney's fees. This amount reflects approximately

336 hours of attorney time, at rates of $200 to $225 per hour for partners and $175 to $200 per hour for associates, and approximately 70 hours of paralegal time, at $60 to $75 dollars per hour. Hock Decl. ¶ 89. Plaintiff has submitted detailed contemporaneous time records and invoices setting forth the dates on which the work was performed, the nature of the work, the individual partners, associates or paralegals doing the work, and the number of hours charged. *See id.*, Ex. P.

The rates charged by plaintiff's counsel are reasonable. Defendants argue, though, that the amount of time charged by counsel far exceeds what was required to prosecute this case. Defendants do not, however, challenge any particular entries in counsel's time records. Moreover, the procedural history of this case is a long and complicated one, largely as a result of defendants' repeated defaults and bankruptcy filings. Accordingly, a substantial fee is warranted.

Nevertheless, given the relatively routine nature of this action, the amount of time spent by counsel and the ratio of attorney to paralegal time seem particularly high. I therefore respectfully recommend reducing the fees sought by roughly 20 per cent, resulting in a fee award of $54,000.00. *See Carey*, 711 F.2d at 1146 (approving of trial court's percentage reductions and recognizing "that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application").

Plaintiff also seeks to recover costs, including a $150 filing fee and $2,218 in additional expenses. Hock Decl. ¶¶ 93-94. The filing fee is reasonable and should be awarded. The additional disbursements are detailed in the billing records submitted by plaintiff and appear to be appropriate. Hock Decl., Ex. P. I therefore recommend that plaintiff be awarded $2,368 in costs.

## Conclusion

For the reasons set forth above, I respectfully recommend that plaintiff be awarded:

1) judgment against both Gorman in his individual capacity and Citi-Wide, jointly and severally, for the balance of the Second Stipulation, $19,991.91, together with interest at the annual rate of

5.25%, from May 1, 2003 through the date final judgment is entered;

2) judgment against defendant Citi-Wide for the full amount of unpaid contributions, or $70,727.80;

3) judgment against defendant Citi-Wide for the full amount of dishonored checks, or $31,079.83;

4) judgment against defendant Citi-Wide for interest on the unpaid contributions totaling $10,114.16 through March 19, 2007, and additional interest through the date judgment is entered at the rate of $8.80 per day;

5) judgment against defendant Citi-Wide for interest on the amount of the dishonored checks totaling $6,249.84 through March 19, 2007, and additional interest through the date judgment is entered at the rate of $4.20 per day;

6) judgment against defendant Citi-Wide for liquidated damages in an amount equal to the total amount of interest awarded on the date final judgment is entered; and

7) judgment against defendant Citi-Wide for attorney's fees of $54,000.00 and costs of $2,368.00, for a total award of fees and costs of $56,368.00.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable Dora L. Irizzary, within ten days of receiving this Report and Recommendation and, in any event, on or before November 5, 2007. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon counsel for defendants Gorman and Citi-Wide, and to file proof of service with the Clerk of the Court.

_____/s/_____
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**October 20, 2007**

*U:\JB 2006-2007\JacobsonvCitiwide2.wpd*