```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------- x
                                                   :
LARRY JACOBSON, as Chairman of the                 :
Joint Board of the Electrical Industry,            :
                                                   :    **ORDER MODIFYING IN PART**
                                      Plaintiff,   :    **AND ADOPTING IN PART**
                                                   :    **REPORT & RECOMMENDATION**
              -against-                            :
                                                   :    03-cv-263 (DLI)(SG)
CITI-WIDE ELECTRICAL CORP. d/b/a                   :
CITI-WIDE ELECTRIC, INC., and JOHN                 :
GORMAN,                                            :
                                      Defendants.  :
                                                   :
-------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Larry Jacobson, as Chairman of the Joint Industry Board of the Electrical Industry ("Joint Board"), commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, against the Citi-Wide Electrical Corporation ("Citi-Wide") and John Gorman, the principal of Citi-Wide, to collect delinquent benefit contributions and various other sums allegedly owed to the Joint Board under a collective bargaining agreement ("CBA").

The parties' dispute arose from Citi-Wide's failure to pay weekly contributions into employee benefit plans administered by the Joint Board, as set forth in the CBA. The defendants agreed in successive stipulations to pay the delinquent contributions as well as additional contributions that would become due. Plaintiff filed suit in January 2003 when the defendants fell behind on their payment obligations under the first stipulation. The parties agreed to an amended Stipulation and Forbearance Agreement ("the Second Stipulation") in April 2003,

which the defendants subsequently breached by failing to complete their payment obligations. Plaintiff then amended the complaint to enforce the Second Stipulation.

The defendants repeatedly failed to comply with court orders, and Chief U.S. Magistrate Judge Steven M. Gold issued a report and recommendation on November 15, 2006 recommending the court enter default judgment against the defendant. This court adopted Magistrate Judge Gold's recommendations and referred the matter to back to him to determine plaintiff's damages. On October 20, 2007, Magistrate Judge Gold issued a second report and recommendation ("R&R") that recommends awarding plaintiff the following:

(1) the defendants' unpaid balance of delinquent contributions specified in the Second Stipulation, in the amount of $19,991.91, plus interest thereon at the annual rate of 5.25% from May 1, 2003 through the date of final judgment;

(2) additional weekly contributions that became due after the parties entered into the Second Stipulation ("Additional Unpaid Contributions") in the estimated amount of $70,272.80, plus interest thereon;

(3) liquidated damages equal to the amount of interest on the Additional Unpaid Contributions as of the date final judgment;

(4) payments to the Joint Board that the defendants sought to make with dishonored checks, in the amount of $31,079.83, plus interest thereon;

(5) plaintiff's attorney's fees in the amount of $54,000 and costs of $2,368, totaling $56,368.

(R&R 15-16). The Magistrate Judge recommends holding both defendants jointly and severally liable for item (1) above and imposing liability for items (2)-(5) above against only Citi-Wide, the corporate defendant. Plaintiff filed timely objections, objecting to two aspects of the R&R.

2

Plaintiff argues that Gorman should be held personally liable not only for item (1), but also items (2), (3) and (5). Plaintiff also objects to the R&R's downward adjustment of attorney's fees from $66,629 to $54,000. Defendants did not file any objections.

As set forth below, the court, after *de novo* review of plaintiff's objections, modifies the R&R to hold Gorman personally liable for item (2), the Additional Unpaid Contributions, but not the interest thereon. Otherwise, the court adopts the remainder of the R&R, including Magistrate Judge's revised amount of attorney fees.

## I. STANDARD OF REVIEW

When there are no objections to the R&R, the court may adopt the R&R if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (citation omitted). When objections are made, a district judge must make a *de novo* determination with respect to those parts of the R&R to which any party objects. The district court may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b); *see also United States v. Raddatz,* 447 U.S. 667, 673-76 (1980).

## II. DISCUSSION

### A. Gorman's Personal Liability for the Additional Unpaid Contributions that Became Due Under the Second Stipulation

The Magistrate Judge held defendant Gorman personally liable for item (1), the unpaid balance of the delinquent contributions, because Gorman had explicitly assumed personal liability for that balance and interest thereon in the Second Stipulation. The preamble of the Second Stipulation expressly defines "Debtors" to include John Gorman in his individual capacity. (*See* Second Stipulation, attached as Exh. E to Declaration of David Hock ("Hock

3

Decl.") (defining "Citi-Wide, and John Gorman, individually, collectively . . . as 'Debtors'")). The "Debtors" agreed that they owed "jointly and severally" the balance of the delinquent contributions and interest thereon, and agreed to pay off the debt in monthly installments. (*See* Exh. E. ¶¶ 1-2).

Plaintiff argues that Gorman agreed not only to pay the delinquent contributions, item (1), but also committed himself to pay weekly contributions that would become due after the Second Stipulation was executed, item (2).

When determining whether an individual intended to be held personally liable for unpaid CBA contributions owed pursuant to ERISA obligations, the court looks to principles of state law. *See Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991). Under New York law, an agent who signs on behalf of a disclosed principal will not be individually bound unless "there is clear and explicit evidence of the agent's intention to substitute or super add his personal liability for, or to, that of his principal." *Id*. (quoting *Mencher v. Weiss*, 306 N.Y. 1, 4 (1953)). Because modern business often occurs between widely held, impersonal corporations, of which signatories only own a small stake, New York courts presume that signatories do not intend to be personally bound by the corporate contracts they sign. *See Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67 (1961). This presumption guards against the risk that lengthy and formulaic contracts will lead unwary signatories to unintentionally assume personal liability. *See Paribas Properties, Inc. v. Benson*, 144 A.D.2d 522, 525 (1st Dep't 1989). However, when the signatory manifests clear intent to be personally bound, and the circumstances reduce the risks that the signatory mistakenly assumed individual liability, courts should enforce personal liability provisions. *See Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994).

Courts consider several indicia to determine whether a personal liability provision in a contract acts as a "trap for an unwary agent" or shows his conscious desire to be personally bound. *Paribas Properties, Inc.*, 536 N.Y.S.2d at 525. The overall construction of the contract, the contract's length, the proximity of the liability provision to the signature line, and the presence of the signatory's name, may all bear on intent. *See Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 35. Further, courts examine the specific construction of the liability provision and the signature line. It matters whether the personal liability provision is explicit and includes the signatory's name, whether the construction of the signature line suggests that the signatory signed for himself or on behalf of the corporation, and whether the contract follows "the nearly universal practice" of having the signatory sign twice, once as individual and once as corporate agent. *Mason Tenders*, 301 F.3d at 54; *Lollo*, 35 F.3d at 35. Finally, courts look to extra-textual factors to protect the "unwary agent," by examining the nature of the contract negotiations and the signatory's corporate role. *See Paribas,* 536 N.Y.S.2d at 525. When these factors clearly weigh in favor of personal liability, courts do not hesitate to hold signatories personally liable. *See Lollo*, 35 F.3d at 35.

In this case, several factors indicate that Gorman did in fact intend to assume personal liability in the Second Stipulation for subsequent weekly contributions as they became due. In Paragraph 6 of the Second Stipulation, "Debtors . . . agree[d] to make all weekly contributions required under the CBA as they become due, in addition to the payments required under [P]aragraph 2." (Exh. E ¶ 6). Gorman signed the Second Stipulation twice, both as principal of Citi-Wide and in his personal capacity. The agreement identifies Gorman in his individual capacity and names him as one of only two parties that together constitute "Debtors" in the agreement. Paragraph 6 specifies the Debtors' obligation to pay further contributions that would

5

become due. Though this provision does not name Gorman, it refers to Debtors in the plural, and since there are only two debtors, and one being Gorman in his personal capacity, the reference to debtors in the plural leaves little doubt that Gorman was meant to be bound.

In addition to naming Gorman as a debtor, the agreement provides separate signature lines for Gorman to sign in his capacity as the principal of Citi-Wide as well as in his personal capacity. The personal liability signatory line prints Gorman's name twice, once as "JOHN GORMAN" above the line and again as "John Gorman, Personally," beneath the line, which clearly shows that he was not signing the document twice on behalf of the corporation. (Exh. E, at 4). Though Paragraph 6, the liability provision, is located two pages from the signature page, the agreement as a whole, including the signature page, is only four pages long, so the risk that Gorman may have overlooked that provision when he signed the agreement is mitigated by the agreement's relative brevity.

Finally, extra-textual factors further support finding personally liability for the Additional Unpaid Contributions. The language and structure of the Second Stipulation, including the use of Debtors to refer to Citi-Wide and Gorman collectively, are virtually identical to the first stipulation that the parties had agreed to. Though the copy of the first stipulation provided to the court is unsigned, it is reasonable to conclude that Gorman was at least familiar with the language and knew of the terms of the agreement. (*See* Exh. B to Hock Decl.). Gorman also furnished an affidavit (the "Gorman Affidavit") in which he committed himself to judgment on the delinquent contributions identified in the Second Stipulation, "plus such other sums as may be determined to be due and owing in accordance with the [Second] STIPULATION." (*See* "Affidavit for Judgment by Confession" appended to Exh. E of Hock Decl.). This affidavit confirms Gorman's understanding that he would become personally liable for "other sums as

6

may be determined to be due and owing in accordance with the [Second Stipulation] to which the Debtors are a party [sic]." This language supports the conclusion that Gorman, as a principal and officer of Citi-Wide familiar with the language of the Second Stipulation, was not an unwary investor entrapped by an obscure personal liability clause. Instead, the circumstances show that Gorman understood that his payment obligations under the Second Stipulation went beyond the balance of contributions already deliquent to additional contributions that would become due.

The fact that Gorman was not represented by counsel and the plaintiff's attorney drafted the documents gives the court some pause. In other circumstances, this may suggest that the defendants held an unequal bargaining position and Gorman was duped into unknowingly assuming personal liability. However, the totality of the circumstances here, *i.e.*, the explicitness of the affidavit, Gorman's position as an officer of Citi-Wide, his previous exposure to the language of Second Stipulation, and the simplicity and conciseness of the document itself, suggest that Gorman intended to become personally liable. The court therefore finds Gorman and Citi-Wide jointly and severally liable for item (2), the Additional Unpaid Contributions that became due after the Second Stipulation.

**B. Gorman's Personal Liability for Statutory Damages under 502(g)(2) of ERISA**

Plaintiff argues that Gorman should also be held personally liable for interest on item (2), the Additional Unpaid Contributions, as well as item (3), the liquidated damages and item (5), the attorney's fees and costs. Plaintiff's right to damages for those items are provided by statute. Section 515 of ERISA requires "[e]very employer who is obligated to make contributions . . . under the terms of a collectively bargained agreement [to] . . . make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. When the employer has breached the obligations to pay contributions under Section 515, ERISA

7

awards the plaintiff statutory damages including liquidated damages, attorney's fees and interest. *See* 29 U.S.C. § 1132.

The question before the court is not whether plaintiff has sufficiently demonstrated the Joint Board's legal entitlement to be awarded statutory damages, but whether Gorman clearly intended to be held personally liable for such damages in the Second Stipulation. Plaintiff argues that the Second Stipulation was an agreement within the meaning of Section 515 of ERISA because it required Gorman and Citi-Wide to make contributions to a collective bargaining agreement. Hence, they contend that defendants' default of the Second Stipulation triggered ERISA's statutory damages, and since Gorman assumed personal liability for payment of the Additional Unpaid Contributions, he should also be found personally liable for statutory damages that attach for failure to pay those contributions.

The notion that Gorman's breach of his payment obligations would automatically render him liable for statutory damages under Section 502(g)(2) is not apparent to a lay person reading the Second Stipulation. Paragraph 12 states that "the Second Stipulation constitutes an agreement within the meaning of Section 515 U.S.C. § 1145 [sic.], and shall be enforceable in federal court and shall be governed by, and construed in accordance with applicable federal laws." (Exh. E, ¶ 12). Aside from the misidentification of the ERISA code citation, which the court construes against the Joint Board, the drafter of the agreement, this provision gives little notice to a lay reader that the Joint Board's remedies set forth in the stipulation are further supplemented by statutory damages under ERISA. The Second Stipulation itself makes no other reference to ERISA or statutory damages.

Paragraph 10, which describes the consequences of the Debtors' failure to pay the delinquent contributions, warns that they would be subject to a judgment "in the full amount of

indebtedness, plus interest, liquidated damages, attorney's fees and costs, less any payments hereunder." (Exh. E, ¶ 10). This warning, however, does not unequivocally state that the "full amount of indebtedness" would include any further contributions that may become due, as set forth in Paragraph 6. The Gorman Affidavit mentions the statutory damages under Section 502(g)(2) of ERISA but describes them only in relation to the balance of the delinquent contributions already due, not the future contributions that may become due. Because the Second Stipulation does not expressly indicate that the Debtors are liable for statutory damages on unpaid contributions that would become due, the court cannot conclude that Gorman had notice of such a possibility and therefore intended to be held personally liable in those respects when he signed the agreement. The court therefore declines to extend personal liability for interest on the Additional Unpaid Contributions, liquidated damages, and attorney's fees and costs.

### C. Plaintiff's Objection to the Lowering of Attorneys' Fees

The Magistrate Judge reduced the attorneys' fees sought by the plaintiff from $66,629 to $54,000, finding that "given the relatively routine nature of this action," the number of hours billed to attorneys, and the ratio between attorney and paralegal hours, seemed "particularly high." (R&R at 15). Plaintiff objects on the grounds that the defendants' dilatory countermeasures made the prosecution unusually burdensome, and in the Second Stipulation that the defendants agreed to pay attorneys' fees.

The Magistrate Judge, having managed the pretrial proceedings in this case, is familiar with the defendants' litigation tactics, and duly noted the "long and complicated" procedural history of the case. (R&R at 15). He has accounted for the difficulties caused by the defendants in making the downward adjustment in the fee claim. After examining the plaintiff's fee records,

9

this court considers the fee adjustment to be reasonable and finds no reason to depart from the amount recommended in the R&R.

### III. CONCLUSION

As for those portions of the R&R to which no specific objections are made, the court finds no clear error. Based on the foregoing, the court modifies the R&R to impose personal liability on Gorman for the Additional Unpaid Contributions only, without interest, and denies the plaintiff's other objections. The court adopts the modified R&R with slight adjustments in the calculation of interest as set forth below. It is hereby

ORDERED that Judgment be entered against Gorman, in his individual capacity, and Citi-Wide, jointly and severally, for the balance of delinquent contributions under the Second Stipulation in the amount of $19,991.91 and interest thereon in the amount of $7,394.43 through March 31, 2008,[1] and accruing at $2.88 per diem until the date final judgment is entered; it is further

ORDERED that Judgment be entered against Gorman, in his individual capacity, and Citi-Wide, jointly and severally, for the Additional Unpaid Contributions in the amount of

---

[1] The Magistrate Judge calculated the interest on the delinquent contributions by applying the interest rate of 5.25% to the principal amount of $19,991.91 for the entire period from May 1, 2003 through the date that final judgment is entered. However, from May 1, 2003 to March 10, 2004, before partial repayments were made in this case, the principal owed was greater than $19,991.91 so the interest accrued during that period was also greater. The court recalculates the interest below using principal amounts and dates listed in Exhibit G of Hock Decl.

| Time Period | | Principal Amount | Number of Days | Rate of Interest | Interest Accrued |
| --- | --- | --- | --- | --- | --- |
| 5/1/2003 | 5/8/2003 | $62,769 | 7 | 5.25% | $63.20 |
| 5/8/2003 | 3/10/2004 | $60,269.19 | 307 | 5.25% | $2,661.34 |
| 3/10/2004 | 3/28/2008 | $19,991.91 | 1,624 | 5.25% | $4,669.89 |
| | | | | Total | $7,394.43 |

$70,727.80; it is further

ORDERED that Judgment be entered against Citi-Wide for interest on the Additional Unpaid Contributions in the amount of $14,690.16 through March 31, 2008,[2] accruing at a rate of $8.80 per diem until the date final judgment is entered; it is further

ORDERED that Judgment be entered against Citi-Wide for liquidated damages in the amount equal to the interest awarded on the Additional Unpaid Contributions on the date judgment is entered; it is further

ORDERED that Judgment be entered against Citi-Wide for the total value of the five dishonored checks in the amount of $31,079.83 and interest thereon in the amount of $8,423.84 through March 31, 2008,[3] and accruing at the rate of $4.20 to the date final judgment is entered; it is further

ORDERED that Judgment be entered against Citi-Wide for $54,000.00 in attorneys' fees and $2,368 in costs.

SO ORDERED.

Dated: Brooklyn, New York
August 20, 2008

_____/s/_____
DORA L. IRIZARRY
United States District Judge

---

[2] This figure was calculated by adopting the Magistrate Judge's interest amount of $10,114.16 though March 19, 2007 and then adding the number of days from March 19, 2007 to August 20, 2008 (520) multiplied by the per diem rate of $8.80.

[3] This figure was calculated by adopting the Magistrate Judge's interest amount of $6,239.84 though March 19, 2007 and then adding the number of days from March 19, 2007 to August 20, 2008 (520) multiplied by the per diem rate of $4.20.